FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

99 APR -5 PH 3: 11

U.S. DISTRICT COURT
N.D. OF ALABAMA

ATLAS THERAPY, INC.,                  ]
                                      ]
      Plaintiff(s),                   ]
                                      ]
vs.                                   ]
                                      ]   CV 98-N-1258-S
UNITED STATES OF AMERICA,             ]
                                      ]
      Defendant(s).                   ]

ENTERED

APR   5 1999

### Memorandum of Opinion

### I.    Introduction.

In this suit, Atlas Therapy, Inc. ("Atlas"), seeks to obtain a refund of certain penalties

it paid to the Internal Revenue for failure to timely pay its payroll taxes and file its payroll

tax returns.  The case is properly before this court, which has jurisdiction under 28 U.S.C.

§ 1346.

This matter is presently before the court on the United States' motion for summary

judgment, filed February 12, 1999.  The issues have been briefed by both parties.

Accordingly, the motion is ripe for decision.  Upon due consideration, the motion will be

granted.



## II.    Statement of Facts.[1]

The facts of this case are largely undisputed. Atlas provides temporary therapists and other related personnel to various healthcare facilities throughout the country. It began its operations in the spring of 1993, and has since grown to employ around eighty employees. During the early period of this growth, however, the company apparently had difficulty keeping up with its payroll tax obligations regarding these employees. Problems in late 1993 and early 1994 resulted in substantial penalties, some of which were abated by the IRS, and led the company to hire a new Chief Financial Officer. Barry Davis, who had previously served as Vice President of Finance for Baptist Health Systems, was selected for the job.

Denise Conley,[2] Atlas's president, instructed Davis to contract with an independent third party to handle the taxpayer's payroll system. Davis informed her that computer problems prevented Atlas from converting to a payroll system but assured her that the computer problems would be resolved in a few months. Conley ordered Davis to convert to the outside payroll system as soon as possible, and in the meantime to assure that payroll tax matters were taken care of in a timely fashion. Conley also asked Davis to

---

[1] The facts set out below are gleaned from the defendant's submission of undisputed facts in support of the summary judgment motion, supplemented by the court's review of the evidence submitted by both parties. Because Atlas Therapy failed to respond to defendant's submitted facts, these facts are deemed admitted for summary judgment purposes. *See Initial Order*, February 6, 1998, at 4; *see also FTC v. Febre*, 128 F.3d 530, 535-36 (7th Cir. 1997). The court notes that these facts are amply supported by the record, including both parties' evidence. Indeed, the United States has relied largely on the affidavit of the plaintiff's president in constructing its version of events. Thus there is apparently no dispute between the parties as to what actually happened. However, the facts set out are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] Formerly Denise Turner.

2

prepare periodic financial statements for her review, and asked her CPA, Mr. Bookout, to monitor Davis's performance as Chief Financial Officer. Bookout and Davis met on several occasions and Bookout reviewed financial statements prepared by Davis.

Davis, however, failed to timely file and deposit Atlas's payroll taxes. It appears that he covered up this failure by noting false payments in his financial statements, by listing as tax payments what were in fact penalties for late filings, and by misleading both Conley and Bookout about the company's tax status. Conley was out of the country on Atlas business during at least a portion of this time period. However, she ultimately uncovered some of the problems Davis had created and fired him.

Atlas then hired Bubba Justice, a CPA with health care accounting experience, to fill Mr. Davis's spot. She asked Justice, along with Mr. Bookout and his firm, to review Atlas's books. They discovered that Davis had failed to deposit Atlas's payroll withholding taxes on time and had not filed timely payroll tax returns for the third and fourth quarters of 1994. The forms Davis had prepared were also in error and an additional employment tax liability was owing.

Conley apparently discovered this situation on or about March 8, 1995, and instructed Justice to inform the IRS of the facts described above. The IRS assessed substantial penalties for Atlas's failure to timely deposit, pay, and file the company's payroll taxes, and also assessed penalties on the penalties. Atlas paid the taxes imposed, then sought a refund of the penalties paid. The company contended that the IRS should abate the penalties because the company's delinquent payments and filings were excusable.

3

When the IRS refused to refund the penalties, Atlas brought this action to compel the IRS to do so.

## III.    Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the nonmovant has properly responded to a motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

5

574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

The parties' primary, and apparently only, dispute in this case revolves around Atlas's entitlement to an abatement of the penalties imposed by the IRS. Sections 3102(a) and 3402(a) of the Internal Revenue Code (26 U.S.C.) require an employer to deduct and withhold income and social security taxes from the wages paid to its employees. Section 7501 of the Code provides that the withheld taxes shall be held by the employer as a special trust fund for the benefit of the United States. Section 3403 provides that the employer is liable for the payment of the taxes required to be withheld. The employer is required to report the amount of withheld taxes on its payroll tax return (Form 941). This return and a payment of employment taxes is due every calendar quarter. I.R.C. § 6011(a);

6

Treas. Regs. 31.6011(a)-4(a)(1) and 31.6071(a)-l(a) (26 C.F.R.). An employer is required to deposit the employment and income taxes withheld in an approved bank at various intervals during a calendar quarter depending on how much is withheld. I.R.C. § 6302 and Treas. Reg. § 31.6302(c)-l(a)(i). Thus, under the controlling statutes and regulations, it is the employer's obligation to file timely returns, and to make timely employment tax deposits and payments. It is undisputed that during the periods at issue, Atlas failed to timely file its employment tax returns, failed to timely pay its employment taxes, and failed to timely make deposits of its employment taxes. Atlas thus failed to carry out its obligations under the tax code.

Under the scheme devised by Congress, when a taxpayer fails to comply with the statutory requirements detailed above, a penalty may be imposed. In imposing penalties for failure to comply with the statutory requirements, Congress sought to ensure timely filing of tax returns and timely payment of tax liability. *See United States v. Boyle*, 469 U.S. 241, 245 (1985). Thus, Section 6651(a)(l), 6651(a)(2), and 6656(a) impose penalties when a taxpayer fails to timely file a required return, fails to timely pay a tax, or fails to timely make required deposits of taxes, respectively. The IRS imposed the penalties set out by these sections for Atlas's delinquent filing and payment of taxes.

Atlas argues, however, that the assessed penalties should be abated on the ground that its failures were due to reasonable cause, i.e. they were not really the company's fault at all. Each of the penalty provisions cited above states that a penalty should not be imposed if the taxpayer's failure to comply with the statutory requirement was due to "reasonable cause" and not to "willful neglect." *See* I.R.C. § 6651(a)(1); 6651(a)(2);

7

6656(a). As the IRS has interpreted this language, to qualify for the exception a taxpayer must prove that it "exercised ordinary business care and prudence" but "was nevertheless unable to" file or pay its taxes in time. *See* 26 C.F.R. § 301.6651-1(c)(1). This has been characterized as a "heavy burden." *Boyle*, 469 U.S. at 245; *Valen Manufacturing Co. v. United States*, 90 F.3d 1190, 1193 (6th Cir. 1996); *Roberts v. Commissioner*, 860 F.2d 1235, 1241 (5th Cir. 1988).

Atlas contends that it acted with reasonable care and prudence in delegating its tax compliance responsibilities to Davis and was then unable to comply with the tax laws because Davis concealed his failure to competently perform his duties from the corporation's officers and accountants. In other words, according to Atlas "it is Barry Davis's fault that the returns were not filed and the taxes were not paid," *Aff. of Denise Conley-Turner* (submitted as an exhibit to Plaintiff's opposition to Summary Judgment), and the company should therefore not be held responsible for the delinquencies.

Thus the sole question presented to the court is whether, under the prevailing legal standards and precedents, Davis's misdeeds constitute "reasonable cause" for Atlas's failure to discharge its duties under the tax code. Any answer to this question must begin with the Supreme Court's decision in *Boyle*. *Boyle* involved an executor who retained an attorney to handle the taxes of the estate. After the attorney failed to file the estate tax return on time, the executor claimed that the resulting penalties should be abated because the lawyer's mistake was a "reasonable cause" of the delinquent taxes. The Supreme Court disagreed. According to the Court, the fact that hiring and relying on a tax attorney was "plainly an exercise of the 'ordinary business care and prudence' prescribed by the

8

regulations" did "not provide an answer to the question" at hand. *Boyle*, 469 U.S. at 250. "To say that it was 'reasonable' for the [taxpayer] to assume that the attorney would comply with the statute may resolve the matter as between them, but not with respect to the [taxpayer]'s obligations under the statute." *Id.* Such a delegation of responsibility, however reasonable, is insufficient to escape liability because "Congress has placed the burden of prompt filing on the [taxpayer], not on some agent or employee of the [taxpayer]." *Id.* at 249. "That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute." *Id. at 250.* The court thus established a rule "with as 'bright' a line as can be drawn consistent with the statute," *id.* at 248, that reasonable cause does not include the "taxpayer's reliance on an agent employed by the taxpayer." *Boyle*, 469 U.S. at 248 n.6; *Valen*, 90 F.3d at 1193.

While *Boyle* involved an individual taxpayer, this bright line rule applies equally to corporations.[3] *See, e.g., Mason Motors Co. v. U.S.*, 8 F. Supp. 2d 1177, 1179-80 (D. Minn. 1998) (collecting cases). Atlas therefore cannot prevail simply by showing that it relied on an employee to handle the payroll taxes, even if ordinary business care and prudence was exercised in his selection and supervision. In fact, *Boyle* left open only one narrow avenue to liability which is relevant in this case. Despite its unambiguous pronouncement that reliance on an agent is not "reasonable cause" for a late filing, *Boyle* distinguished cases

_____

[3] Indeed, some courts have suggested that the rationale for the rule is particularly apparent in corporate situations, because "a corporation can only act through its employees or officers, [so] the failure of a corporation to timely file tax returns or to timely make required tax payments or deposits almost invariably will be the result of the failure of one or more of the corporation's [sic] employees or officers to carry out his or her assigned duties. If an employee or officer's non-performance of duties was deemed to be reasonable cause, the IRS would rarely be able to impose tax penalties on a corporation." *In re Savage*, 179 B.R. 342, 347 (Bankr. S.D. Fla. 1995). If interpreted in this way, the "reasonable cause" exception to liability, which Congress provided only "in a narrow range of situations," *Boyle*, 469 U.S. 250-51, would completely swallow the rule.

involving a taxpayer with a "disability" precluding compliance with the requirements of the

tax code. The Court explained that:

> The principle underlying the IRS regulations and practices -- that a taxpayer
> should not be penalized for circumstances beyond his control -- already
> recognizes a range of exceptions which there is no reason for us to pass on
> today. This principle might well cover a filing default by a taxpayer who
> relied on an attorney or accountant because the taxpayer was, for some
> reason, *incapable by objective standards* of meeting the criteria of "ordinary
> business care and prudence." In that situation, however, *the disability alone
> could well be an acceptable excuse for a late filing*.

*Boyle*, 469 U.S. at 248 n.6. In other words, to show reasonable cause a taxpayer "must also

satisfy those portions of the relevant regulations that require a taxpayer to show that it has

been rendered unable to meet its responsibilities despite the exercise of . . . care and

prudence." *Valen*, 90 F.3d at 1193; *see* 26 C.F.R. Sect. 301.6651-1(c)(1).

Since *Boyle* was decided, a number of courts have struggled with the application

of this "disability" analysis in the corporate context. *See, e.g., Valen*, 90 F.3d at 1193-94;

*Conklin Bros. of Santa Rosa, Inc. v. U.S.*, 986 F.2d 315 (9th Cir. 1993); *In re American

Biomaterials* Corp., 954 F.2d 919 (3d Cir. 1992); *Mason Motors*, 8 F. Supp. 2d at 1180; *Van

Camp & Bennion v. U.S.*, 1996 WL 529225 (E.D. Wash. 1996); *Midwest Terminals, Inc. v.

U.S.*, 882 F. Supp. 627 (W.D. Kenn. 1992); *Universal Concrete Prods. v. U.S.*, 1990 WL

106584 (E.D. Pa. 1990); *In re Savage*, 179 B.R. 342 (Bankr. S.D. Fla. 1995); *In re Sykes &

Sons, Inc.*, 188 B.R. 507 (Bankr. E.D. Pa. 1995). Generally, these cases involve a key

financial management employee who failed to carry out the tax obligations assigned to him

and also, for one reason or another, hid this information from the corporation. The

corporation then argues, as Atlas has here, that this intentional wrongdoing rendered the

10

corporation unable to carry out its obligations, or "disabled" in *Boyle's* parlance. Most of the courts who have addressed the problem appear to agree both that there are at least some instances in which the conduct of an officer might render a company disabled from timely paying its taxes, and that such situations are quite rare. However, there appears to be at least some disagreement over how bad the circumstances would have to get in order to justify a disability argument.

The court has been able to locate only one decision in which a court actually ordered the abatement of penalties, and this decision may therefore be the best starting point for a discussion of the problem. In *American Biomaterials* the Third Circuit considered the plight of a corporation whose Chief Executive Officer/Chairman of the Board and Chief Financial Officer/Treasurer conspired to embezzle money from the company, as a result failed to pay taxes on the corporation's actual income, and hid that failure from the company. *See American Biomaterials*, 954 F.2d at 921-22. The court, after discussing the disability exception to *Boyle's* general rule, held that under the circumstances the corporation was disabled and could not be held liable for its failures to carry out its tax responsibilities. *See id.* at 927.

Most of the courts who have considered the issue since *American Biomaterials* have cited the case with approval, though as already noted none have reached the same ultimate conclusion. However, courts have not always agreed on exactly why the case should have come out the way it did. As later decisions have pointed out, two unique circumstances distinguish this case from the usual ones. First, the officers involved were actually engaged in, and convicted of, criminal action against the corporation. Indeed, in summarizing its

11

holding the Third Circuit referred to situations in which "the officers of a corporation commit *criminal acts* against the corporation." *Id.* at 927 (emphasis added). Second, and perhaps more importantly, the officers involved were in direct and total control of the corporation. Their conduct thus appeared to be "beyond the corporation's control because they were the control people in the corporate structure. Supervision over such control people was not possible." *Conklin*, 986 F.2d at 318. Thus some cases have suggested that the *Biomaterials* analysis should be limited to actual criminal conduct, while other courts would require malfeasance by officers at the top of the corporate pyramid and still others would require both.

This court concludes, as have a number of others, that the corporation's ability to control the action of the wrongdoer is the key to the disability assessment. When a corporation reposes trust in a subordinate employee and that trust is violated, the company is obviously put at a disadvantage. When the employee attempts to hide the trouble he has created, the problem becomes all that much worse. But the situation is no different from what happens to an individual taxpayer who reposes trust in an agent, and is similarly misled about the agent's activities. An argument that a corporation should be let off the hook because a subordinate employee hid his failure to pay taxes thus boils down to a claim that misrepresentation by an agent constitutes an exception to *Boyle*'s rule. Such an exception is simply not consistent with *Boyle*'s sweeping language, which indicated that a taxpayer who could have feasibly discharged the responsibilities owed to the government cannot escape liability regardless of what an agent may or may not have done. *Boyle* makes no distinction between negligent behavior on the part of an agent and

12

intentional misrepresentations by the same agent. Having decided to delegate tax duties to an agent, the taxpayer is stuck with the results. "[A]lleged misrepresentations do not relieve the taxpayer of his duty to ensure that his tax return was filed on time." *McMahan v. Comm'r*, 114 F.3d 366, 371 (2d Cir. 1997); *see Olsen Assoc., Inc. v. U.S.*, 853 F. Supp. 396, 400-01 (M.D. Fla. 1993) ("false representation" that an extension has been obtained not an excuse for late filing). A corporation should not be treated differently, so even deceptive conduct by a subordinate employee cannot constitute "reasonable cause" for tax delinquencies. The court therefore holds that misconduct by a corporate officer or employee who is susceptible to the control of higher-level managers is not sufficient cause to abate the company's tax penalties. *See Valen*, 90 F.3d at 1193-94; *Conklin Bros.*, 986 F.2d at 318-19; *Mason Motors*, 8 F. Supp. 2d at 1181; *Van Camp & Bennion*, 1996 WL 529225 at *7-8; *see also In re Sykes & Sons, Inc.*, 188 B.R. at 514 n.8. *But see Midwest Terminals*, 882 F. Supp. at 629 (may be sufficient cause if the company had substantial controls in place which were thwarted); *Universal Concrete Prods.*, 1990 WL 106584, at *2.

The situation presented in *American Biomaterials* is completely different, however. In that case, the two highest ranking corporate officials were engaged in a scheme of deception to harm the corporation. A corporation is, after all, nothing but an intangible entity. It must rely on some person or persons to oversee its affairs in this corporeal world. When the individuals who sit in the ultimate seat of corporate authority turn against the company, it has no one to look out for its interests. In that limited situation, the corporation truly is disabled and cannot be expected to comply with its obligations under the tax laws. *See Conklin*, 986 F.2d at 318.

13

Atlas simply cannot fit itself within this very narrow exception to *Boyle*'s broad rule. In the case at bar, there is no allegation that the taxpayer was unable to file its returns or pay its taxes, except that it left the job to an agent who bungled it. The corporation, acting through Denise Conley,[4] always retained the authority to oversee Davis and ensure that the taxes were paid. Indeed, once the problem was belatedly discovered, Davis was fired and the taxes were quickly brought up to date. There is simply no evidence that Atlas was "incapable by objective standards" of caring out its responsibilities. *Boyle*, 469 U.S. at 248 n.6. Atlas is therefore not entitled to abatement of the penalties it paid.

Given these facts, the government has quite clearly carried its burden of presenting evidence showing there is no dispute of material fact. *Celotex*, 477 U.S. at 322-23. Therefore this court concludes that there is no genuine issue of material fact and the government is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**V.    Conclusion.**

Accordingly, the government's summary judgment motion will be granted. The court will enter an appropriate order in conformity with this memorandum of opinion.

---

[4] Ms. Conley asserts that she was out of the country for part of the time in question on Atlas business, and so was incapable of preventing Davis's misconduct. The court is not persuaded. Conley had the authority to find someone else to handle the taxes, or to ensure herself that they were properly handled. She did not, and chose instead to leave the taxes in Davis's hands and spend her time handling Atlas's primary business. This is perhaps a wise business decision, but it is a decision nonetheless. It does not establish that she and Atlas could not have taken care of the taxes had other arrangements been made. Under *Boyle* these circumstances cannot excuse the company's failure to discharge tax responsibilities it was fully capable of discharging.

14

Done, this ___5th___ of March, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE